J-A22003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RICHARD S. FRIEDMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JAMES A. PASCOTTI AND L'EQUIP, INC. | |
| Appellee | No. 237 MDA 2016 |

Appeal from the Order Entered January 21, 2016
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2014-CV-08150-NT

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED OCTOBER 03, 2016**

Richard Friedman appeals from an order striking a judgment by confession that Friedman entered against L'Equip, Inc. and James Pascotti. We affirm.

L'Equip, a corporation, had two owners: Pascotti, the majority (90%) shareholder and president, and Friedman, the minority (10%) shareholder. On September 18, 2000, Commerce Bank loaned L'Equip $500,000.00 in exchange for a promissory note.  Pascotti signed the note in his capacity as president of L'Equip.  The note contained a confession of judgment and warrant of attorney clause applicable to "Borrower" (L'Equip) and provided that the "obligations under this note are joint and several."

1

On the same date, September 18, 2000, L'Equip signed a business loan agreement. The agreement did not have a confession of judgment clause, but it did identify Pascotti and Friedman as guarantors of the loan and stated that they were each jointly and severally liable for the $500,000.00 principal sum.

Finally, on the same date, Pascotti and Friedman signed separate but identical guarantees that guaranteed repayment of the note. The guarantees had confession of judgment and warrant of attorney clauses applicable to "guarantor".

On July 14, 2005, Pascotti entered into a mortgage with Commerce Bank and pledged his home in Harrisburg as further collateral for the business loan.

On June 16, 2008, L'Equip, as "Borrower", executed a change-in-terms agreement in which it agreed to pay the remaining principal balance of $320,739.26 on the loan in 59 consecutive monthly installments of principal and interest at a rate of 6.5% per annum, with a final payment of all remaining principal and interest in the amount of $190,152.28 due on April 18, 2013.

On August 4, 2008, L'Equip, Pascotti and Friedman entered into a purchase agreement with Kitchen Resource in which Kitchen Resource agreed to purchase certain assets of L'Equip to facilitate payment of the

Commerce Bank loan. The purchase agreement provided that Friedman and Pascotti continued to remain as guarantors on the Commerce Bank loan.

On or about May 16, 2012, L'Equip, through Friedman, entered into an amendment of the August 4, 2008 purchase agreement which reduced the purchase price for L'Equip's assets. Pascotti later "acquiesced" to this amendment.

On January 11, 2013, Friedman entered into an agreement with Commerce Bank to purchase the foregoing instruments -- the 2000 promissory note, the 2000 business loan agreement, the 2000 guarantees of Friedman and Pascotti, the 2005 mortgage on Pascotti's home, the June 16, 2008 change in terms agreement, and the May 16, 2012 amendment to the change in terms agreement -- for $148,460.70.

On September 8, 2014, Friedman confessed judgment against Pascotti and L'Equip for $189,148.86, consisting of principal of $148.460.70 (the amount Friedman paid to Bank for the purchase of the instruments), plus interest, attorney fees and late charges. It appears from the record that the sheriff served the confession of judgment papers on September 9, 2014. On October 9, 2014, Pascotti and L'Equip filed a timely petition to strike or open the confessed judgment.

On July 24, 2015, Pascotti and L'Equip moved to admit bank loan documents into the record as supplemental exhibits. On December 9, 2015, Friedman stipulated to the admission of most of the documents, including

documents in which Commerce Bank officials stated that the loan was paid off in full. In particular, the bank records stated "loan is being paid off with guarantor's cash," "loan paid off and closed 1/11/13," "the note and all documents will be assigned to Mr. Friedman in consideration of payment in full of all principal, interest, and costs of the Metro Bank loan," and "the above file has been sold to Richard Friedman, one of the guarantors. He already paid the 'purchase price'."

On January 21, 2016, the trial court entered an order striking the judgment. Friedman filed a timely appeal, and both Friedman and the trial court complied with Rule 1925.

Following Friedman's appeal, this Court directed him to show cause why we should not quash his appeal. Our concern was that the order striking Friedman's judgment was not appealable, because it appeared that the order did not end the case but merely resulted in additional litigation between the parties. Friedman filed a response to the show cause order, and the matter was referred to this panel for consideration.

Friedman raises the following issues on appeal, which we have re-ordered for purposes of disposition:

1. Whether or not Friedman's appeal is proper and can be heard when the trial court's order striking the confessed judgment meets the definition of a final order under Pa.R.A.P. 341 because it disposes of "all claims and all parties"?

2. Whether or not the court erred as a matter of law by granting [Pascotti's and L'Equip's] motion to strike when a fatal defect did not exist?

a. Whether or not the court erred as a matter of law by granting [Pascotti's and L'Equip's] motion to strike when Friedman was not suing himself but rather a guarantor of the note?

b. Whether or not the court erred as a matter of law by granting [Pascotti's and L'Equip's] motion to strike when Friedman was transferred and assigned the right to confess judgment from the bank?

Brief For Friedman, at 4.

Friedman's first argument concerns whether we have jurisdiction over this appeal as a final order. We hold that the order striking Friedman's judgment is immediately appealable.

In general, an order striking a judgment is not appealable, because "[s]uch an order anticipates further litigation because the parties are placed back in the position they were in prior to the entry of the judgment." *UPS v. Hohider*, 954 A.2d 13, 16 (Pa.Super.2008). An order striking judgment is appealable, however, when its effect is to end the existing litigation and require the filing of a new action. *Id.* (worker's compensation judge ordered that employer had subrogation interest of $67,223.23 in employee's lawsuit against third party, and employer entered judgment in common pleas court against employee for this amount; court granted employee's motion to strike judgment, and employer appealed; order held appealable because it effectively required employer to file new, separate civil action to enforce its subrogation rights).

Under **Hohider's** rationale, the present order striking Friedman's judgment is immediately appealable. Confession of judgment actions are stand-alone actions; different rules of procedure govern confession actions than standard contract or tort actions. For example, in a confession action, the Rules prohibit the confession complaint from having a notice to plead, Pa.R.Civ.P. 2952(b), whereas civil complaints must have a notice to plead. As a result, Friedman's complaint only had a single count seeking confession of judgment – so when the court struck Friedman's judgment, the order effectively ended Friedman's confession action. He can still file a new action to prosecute other civil claims,[1] but he cannot prosecute these claims in the present action.

In his second argument on appeal, Friedman contends that the trial court erred in striking his judgment, because there was no fatal defect on the face of the record. We conclude that the trial court's decision was proper.

A petition to strike a judgment

> may be granted only if a fatal defect or irregularity appears on the face of the record. Similarly, we review [an] order denying [an] Appellant's petition to open [a] confessed judgment for an

---

[1] Pascotti and L'Equip agree that Friedman can file another action against them, notwithstanding the order striking the judgment against them in the present case. **See** Pascotti's and L'Equip's brief at 37 ("even though the confessed judgment was stricken, Friedman can, and undoubtedly will, further pursue Pascotti and L'Equip for indemnification under the note and business loan, as the applicable statute of limitations has not run").

abuse of discretion. In considering the merits of a petition to strike, the court will be limited to a review of only the record as filed by the party in whose favor the warrant is given, *i.e.,* the complaint and the documents which contain confession of judgment clauses. Matters *dehors* the record filed by the party in whose favor the warrant is given will not be considered. If the record is self-sustaining, the judgment will not be stricken. However, if the truth of the factual averments contained in such record are disputed, then the remedy is by a proceeding to open the judgment and not to strike. An order of the court striking a judgment annuls the original judgment and the parties are left as if no judgment had been entered… When determining a petition to open a judgment, matters *dehors* the record filed by the party in whose favor the warrant is given, *i.e.,* testimony, depositions, admissions, and other evidence, may be considered by the court.

*Hazer v. Zabala*, 26 A.3d 1166, 1169 (Pa.Super.2011) (citations omitted).

Normally, in reviewing a petition to strike, the court is limited to the record in existence at the time the plaintiff confesses judgment. *Hazer*, 26 A.3d at 1169. This rule, however, has one exception: the court may also consider additional facts admitted by the confessing party subsequent to confession of judgment. *Peterson v. Schultz*, 58 A.2d 360, 363 (Pa.Super.1948) ("when the fact on which the court is asked to strike off a judgment … is admitted or not questioned, the judgment [may] be stricken off"). In this case, subsequent to confessing judgment, Friedman stipulated to the admission of bank loan records into the record. The trial court was authorized to take these records into account in its review of Pascotti's and L'Equip's petition to strike. *Id*.

With these standards in mind, we examine the reasons given by the trial court for striking judgment. We agree with the court's second reason for striking the judgment:

> The record shows that [Friedman] paid the remaining principal balance of the Promissory Note as consideration for the assignment from Commerce Bank. An assignment does not confer upon the assignee any greater right, power, or interest than that possessed by the assignor. … [Friedman], as Guarantor of the Promissory Note, satisfied the same by paying the remaining balance to Commerce Bank. Commerce Bank cannot confess judgment on a Note that has been satisfied. Therefore, Commerce Bank had no right to confession of judgment that could be conferred upon [Friedman], thus evidencing a fatal defect to the record.

Pa.R.A.P. 1925 Opinion, at 3 (citations omitted).

Under the law of assignment, the assignee, Friedman, stood in the shoes of the assignor, Commerce Bank, and "succeed[ed] to no greater rights than those possessed by the assignor." *Crawford Central School District v. Commonwealth*, 888 A.2d 616, 619 (Pa.2005). The bank records that Friedman admitted into the record via stipulation establish that on January 11, 2013, the date Friedman received the assignment, Commerce Bank deemed the loan paid in full. Since Commerce Bank could not have confessed judgment on a fully satisfied loan, neither could Friedman in his capacity as assignee of Commerce Bank's rights.

Friedman attempts to escape this outcome by arguing that he "purchased" the debt instead of satisfying it. We agree with L'Equip and

- 8 -

Pascotti that labeling the transaction as a "purchase" does not overcome the fact that Commerce Bank treated the loan as paid in full.

Because we agree with the trial court's second reason for striking judgment, we need not address its other reason for this decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/3/2016